ALFRED JOHNSON, Plaintiff, *v.* THE STEAM GAUGE AND LANTERN COMPANY, Defendant.

72  535<br>146a 152

*Statutory factory fire escape — landing place — liability of the occupant of the building to an employee — negligence and contributory negligence — opinion testimony of a surgeon — effect of a factory inspector's fire escape certificate.*

A safe landing place is an essential part of the suitable and proper fire escape required by statute to be maintained on the outside of factories.

A manufacturing company, occupying as lessee a seven-story factory, maintained no stairs from the upper floor to the roof, as prescribed by the statute, but provided the building with two outside fire escapes, consisting of iron rungs inserted in the walls; one of these escapes was practically useless by reason of shutters opening against it; the other escape ended over an open area, some six feet wide, across which there had once been a platform, but the platform, except a remnant about two feet wide and two transverse iron bars on which it rested, had been removed; between these bars was a wooden chute, about three feet wide, the mouth of which was under the fire escape. The building took fire, and an employee of the occupant, in escaping by means of the accessible fire escape, dropped from its bottom rung and fell into the chute and was

injured; he thereupon brought an action against the occupant of the building to recover damages, claiming that his injury was caused by the defendant's negligence in failing to provide suitable and proper fire escapes.

*Held*, that the evidence tended to show that the plaintiff's injury was caused by the negligence of the defendant, it appearing that the defendant had caused the covering of the area to be so removed that persons using the fire escape were liable to receive serious injury.

*Held, also,* that the plaintiff was not guilty of contributory negligence in attempting to use the fire escape.

A surgeon, who had examined the plaintiff immediately after his injury, was permitted to testify, as a witness for the plaintiff, that, judging from the relative position and the condition of the broken bones, in his opinion, the foot of the plaintiff's broken leg struck upon a sloping object, and that the heel of the foot struck the object first before the ball of the foot struck, and that his body was in an upright position when he fell.

*Held*, that the evidence was competent.

The defendant claimed that the approval of the fire escape by the factory inspector operated as a compliance by the defendant with the requirements of the statute and constituted an answer to any charge of negligence. It did not appear that the inspector ever saw, or had his attention called to, the condition of things under the fire escape where the plaintiff was injured.

*Held*, that this claim could not prevail, as it could not be successfully maintained that the inspector's certificate could operate to convert an obviously unsafe landing into a safe one.

MOTION by the defendant, the Steam Gauge and Lantern Company, for a new trial, made upon exceptions ordered to be heard at the General Term in the first instance, after the rendition of a verdict in favor of the plaintiff at the Monroe Circuit on the 9th day of December, 1892.

*Walter S. Hubbell*, for the plaintiff.

*Louis Marshall*, for the defendant.

LEWIS, J.:

This action was brought to recover damages sustained by the plaintiff for injuries sustained while attempting to escape from the factory of the defendant in which he was employed at the time. The building was destroyed by fire on the evening of the 9th of November, 1888. His injuries, he claims, were caused by the defendant's failure to provide suitable and proper fire escapes on the building.

The defendants were the lessees and occupants of a building which was located in the city of Rochester adjoining the Genesee river, and were engaged in manufacturing therein lanterns and steam gauges.

The building was seven stories high and consisted of a main part, which extended north and south, a wing about 100 feet long, running east and west, and connected with the main part on each floor by means of arches, thus constituting a single building.

The Genesee river flowed along and against the north and east foundation walls of the main building. On the south side of the wing and on the west side of the main part, was a court, which ran south to Center street and was at its eastern end about forty feet in width.

The court was surrounded on three sides by buildings; on the west by one extending from Center street to the wing of the defendant's factory; on the east side by a building extending from Center street to the defendant's main building; on the north by the wing of defendant's building.

The natural surface of the ground of this court descended from Center street towards the north so that at the wing building the surface of the ground was about on a level with the top of its foundation wall.

Within this court, and near its north end. a building had been constructed to contain an engine and boiler.

It had independent stone walls; its north wall was located six feet two inches south from the south wall of the wing building; its east and west walls were three or four feet distant from the main building and from the west building, leaving an open area between the engine building and the wing building extending to the bottom of the lower story of the wing building. The engine building was about fourteen feet in height.

The top of it was paved and formed the floor of the court, which was used for the purpose of reaching the steps leading from the court into the building.

When the factory building was constructed there was a pair of stairs leading from the upper floor of the building to an opening in the roof for the purpose of escape in case of fire.

These stairs had been removed by the defendant previous to the fire, and at the time of the fire the only means of reaching the roof was by one of the fire escapes hereafter mentioned.

There were two fire escapes upon the building, both upon the court sides. One was upon the west side of the main part, which it is not necessary to particularly describe for the reason that in consequence of the presence of window blinds opening against the escape it was exceedingly difficult, if not impossible, to reach the escape from the windows of the building.

The other fire escape was upon the east wall of an elevator shaft, which extended out into the court some six feet from the southerly side of the wing part of the building.

This escape was made of iron pipes, the bent ends of which were inserted into the wall of the elevator shaft. It extended from the roof of the building down the wall to a point about fourteen feet above the roof of the boiler room.

This escape was directly over the area described between the boiler room and the wing building.

This area extended from the elevator shaft easterly to the main building some eighteen or twenty feet, and was, as stated, some six feet two inches wide, and some twenty to twenty-five feet in depth.

A person dropping from the lower rung of the escape, but for reasons hereafter stated, would naturally fall into this area or open space. There was a door in the south wall of the wing building just east of the elevator shaft.

When the building was constructed, a platform or landing was placed in front of this door, partially covering the area. There were three or four steps leading from the roof of the engine and boiler building up to this platform.

The treads and platform rested upon two iron rods extending from the boiler building to the wing, and which were so constructed as to support the steps and platform.

The use of this door was abandoned a year or two before the accident in question, and the treads and the outer boards of the platform were removed, leaving only the two iron rods and the remnant of the platform, which was some twenty inches to two feet in width in position.

This change was made to make room for a chute from the court

into the lower story of the wing building, and one was placed in between the iron rods mentioned, near the east wall of the elevator shaft. The chute was about three feet wide, and was made of boards with risers on each side about six inches high.

Its upper end extended up about two or three feet higher than the roof of the engine house ; the chute ran down into the wing of the building into a door directly under the door above described and at an angle of about forty-five degrees.

It was used for sliding boxes and supplies from the court into a lower story of the wing building.

The upper end or mouth of the chute extended out into the court beyond the line of the rungs of the fire escape, but just how far does not appear. It was sufficiently near to the escape so that some of the persons who attempted to descend the fire escape on the night of the fire, in dropping from the escape landed in the chute.

A witness testified that when dropping from the fire escape he swung his body out into the court so as to avoid falling into the area, and fell into the chute.

The plaintiff, in describing his descent, says he dropped straight down from the last rung, and found himself, when he became conscious, in the chute.

There were a large number of employees in the building at the time of the fire. The fire spread with great rapidity filling the building with dense smoke.

The plaintiff was at work at the time the alarm of fire was given upon the fifth floor.

He passed down the stairs leading. from the fifth to the fourth floor and attempted to descend the stairs from the fourth to the third floor, but was prevented from so doing by smoke and fire ; he then went to the fire escape upon the elevator shaft, and proceeded to descend into the court, and when he had reached the lower rung of the escape he dropped from the escape and become unconscious. When he regained his consciousness he found himself seated in the mouth of the chute with his legs hanging over its sides ; his left leg was broken in several places below the knee, making amputation of the leg necessary.

The statute made it the defendant's duty to provide the plaintiff with suitable and proper fire escapes connected with each floor of the

factory above the first, well fastened and secured and of sufficient strength. The statute also required that there should be stairs or a ladder leading from the inside of the upper story of the building to the roof. The stairs, as we have seen, had been removed, and one of the fire escapes was practically useless because of the obstacles in the way of reaching it.

The evidence, we think, tended to show and justified the jury in finding that the defendant failed to provide a proper fire escape; a safe landing is an essential part of a fire escape; had the fire escape in question been upon the north side of the factory over the waters of the Genesee river, it would not be claimed to have been a fire escape within the meaning of the statute.

The defendant had caused the covering to the area to be so removed that persons using the fire escape were liable to receive serious injuries.

The evidence tended to show that plaintiff's injuries were caused by the negligence of the defendant.

The plaintiff was not guilty of contributory negligence in attempting to use the fire escape.

While he had a general knowledge of its location, had seen the chute and knew perhaps that the steps had been removed, he did not know the precise situation and relative position of the fire escape, the steps, chute and area, and if he did it is not surprising that in the excitement of the occasion he did not think and reason quite correctly.

Surgeons testified that they found both bones of the plaintiff's left leg broken below the knee, and that one of the broken bones was driven up into the knee joint.

One of the surgeons was permitted to testify that, judging from the relative position, and the condition of the broken bones, in his opinion the plaintiff's foot of the broken leg struck upon a sloping object, and that the heel of the foot struck the object first before the ball of the foot struck, and that his body was in an upright position when he fell.

This testimony was given by one of the surgeons who saw the plaintiff immediately after his injuries and examined his condition.

We think the evidence was competent.

The witness being a surgeon, presumably had a knowledge of the

anatomy of the human body, the strength and position of the bones of the leg, not common to laymen, and having had the advantage of a personal examination of the plaintiff's leg after the injury, he was properly allowed to give his opinion as an expert.

The defendant's counsel contends that the approval of the fire escape by the factory inspector operated as a compliance by the defendant with the requirements of the statute, and as an answer to any charge of negligence.

The inspector probably never saw or had his attention called to the condition of things under the escape where plaintiff was injured.

It cannot be successfully maintained that his certificate could operate to convert an obviously unsafe landing into a safe one.

The inspector testified that he did observe that the window blinds obstructed access to the fire escape upon the main building, and advised their removal, but that his advice was not heeded by the defendant.

We have examined the defendant's exceptions and find no reason for disturbing the verdict. The motion for a new trial should be denied with costs, and judgment directed for the plaintiff upon the verdict.

DWIGHT, P. J., and HAIGHT, J., concurred.

Defendant's motion for new trial denied, with costs, and judgment ordered for the plaintiff on the verdict.